**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 18-61392-CIV-ALTMAN/Hunt

**BRADLEY DORMAN,**

    *Plaintiff*,

v.

**BSO CHAPLAIN'S OFFICE,** *et al.*,

    *Defendants*.
_____/

# ORDER

On June 20, 2018, the Plaintiff, Bradley Dorman ("Dorman"), filed a *pro se* complaint under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq.* ("Complaint") [ECF No. 1]. The Complaint alleges that, while Dorman was housed at the Broward County Main Jail ("the Jail") in 2018, two "employees of the BSO Chaplins [sic] Office"—Chaplains Aronofsky and Jordan—denied him an opportunity to participate in the Passover holiday. *See generally* Complaint. Specifically, Dorman claims that he was denied the ability to partake of a "proper [Passover] diet and associated religious ceremonie [sic]" in violation of the "First Amendment to the United States Constitution" and RLUIPA. Complaint ¶¶ 18-19. In support, Dorman describes a series of messages he exchanged with Chaplain Jordan, in which he says the Chaplain informed him that he had missed the February 14, 2018 deadline to register for the Passover service. Complaint ¶¶ 6-7.[1]

---

[1] The Complaint avers that the Jail posted "no notice" of its registration requirement "in the Kosher holiday menu section" of the Jail's kiosk computer. Complaint ¶ 15. But the Defendants have attached a copy of the very notice they say was posted. *See* Motion to Dismiss [ECF No. 53 at 11]. In his response, discussed in more detail below, Dorman apparently abandons his allegation that no notice was posted. Instead, his response argues only that he was "unaware of such posting on

Notably, although Dorman says he was "successfully added to the Passover service and diet" at the Jail for Passover in 2017, he concedes that he failed to notify Jail officials of his intention to participate in Passover services in 2018 until April 1, 2018—two days *after* Passover had already begun. Complaint ¶¶ 1, 10-11.[2] By contrast, in 2017, Dorman notified Jail officials of his desire to participate in services on March 6th and again on April 3rd. Complaint ¶ 1.[3]

## THE PROCEDURAL HISTORY

Pursuant to Administrative Order 2019-2, the Clerk referred this case to United States Magistrate Judge Lissette M. Reid for a ruling on all pre-trial, non-dispositive matters and for a report and recommendation on any dispositive questions [ECF No. 29].

After Dorman unsuccessfully appealed several court orders, the Defendants jointly filed, on July 5, 2019, a Motion to Dismiss the Complaint [ECF No. 53], to which Dorman responded by filing a "Motion for Summary Judgment"—a motion the Court will construe as his response to the Defendants' Motion to Dismiss.[4] On January 2, 2020, Judge Reid issued a Report and Recommendation ("R&R"), in which she suggested that the Complaint be dismissed with prejudice for failing to state a claim upon which relief can be granted [ECF No. 67].

---

the kiosk as all notifications that are important are printed and placed around the kiosk." *See* Dorman's Motion for Summary Judgment [ECF No. 55 at ¶ 3]. Dorman then suggests that, rather than having posted its notice on the kiosk computer, the Jail *should have* printed it. *Id.* Dorman also unpersuasively contends that the kiosk—which warns inmates that "[i]nmate information changes quickly . . . [and] may not reflect the current information . . . and should not be relied upon for any type of legal action"—somehow vitiated the registration requirement altogether. *Id.*
[2] In 2018, Passover began on March 30th. *Id.*
[3] In 2017, Passover began on April 10th. *Id.*
[4] Dorman's "Motion for Summary Judgment" does not contain a "separate and contemporaneously filed and served Statement of Material Facts," as required by Local Rule 56.1. Nor does Dorman support any of his positions with citations to materials in the record. Instead, Dorman's "Motion" responds directly to the arguments the Defendants advanced in their Motion to Dismiss.

On January 28, 2020, the Clerk docketed Dorman's "Objection" to Judge Reid's R&R [ECF No. 70]. The "Objection," though, is problematic for two reasons. *First*, it is untimely: Judge Reid's R&R warned the Plaintiff that, if he wished to file objections to the R&R, he must do so "within fourteen days of receipt of a copy of the Report." R&R at 13-14. The R&R also warned Dorman that his failure to file timely objections may prevent the Court from engaging in a *de novo* review of the R&R. *Id.* Judge Reid issued her R&R on December 31, 2019. Pursuant to Federal Rule of Civil Procedure 6(d), therefore, Dorman had until January 17, 2020 to file his objections. *See* FED. R. CIV. P. 6(d) (adding three days for service by mail). But Dorman's "Objection" bears a postmarked date of January 23, 2020—making it three days late. And Dorman offers absolutely no explanation for his failure to timely object to the R&R.[5]

*Second*, the "Objection" does nothing more than "restate[] the arguments previously presented" and "summarize[] what has been presented before." *See Vilme v. McNeil*, No. 08-23138-CIV, 2010 WL 430762, at *1 (S.D. Fla. Feb. 5, 2010) (citing *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004)). Indeed, Dorman's "Objection" simply reiterates the very same arguments Judge Reid has already considered and rejected: (1) that the Chaplain's office told Dorman that he was "too early" to sign up for Passover 2017 when he sent the office an email in March of 2017; (2) that his "timely" registration for Passover 2017 should have automatically rendered timely his 2018 registration, even though the latter occurred two days *after* the holiday had already begun; and (3) that his failure to review the notice requirement on the Jail's kiosk computer absolved him of any obligation to comply with its terms. *See generally* Objection [ECF

---

[5] Nor does Dorman ever suggest that his "Objection" would have been timely under the "prisoner mailbox rule," by which a *pro se* prisoner's filing is deemed "filed" as of the date "he delivered the [document] to prison authorities for forwarding to the District Court." *Houston v. Lack*, 487 U.S. 266, 270 (1988).

No. 70]. Because Dorman's "Objection" is untimely—and since it does nothing more than restate the arguments Judge Reid has already rejected—the Court may disregard the "Objection" and review Judge Reid's R&R for clear error. *See Vilme*, 2010 WL 430762 at *1 (recognizing that objections are "insufficient" when petitioner "raises the exact same arguments" already presented to magistrate judge).

## THE LAW

When a magistrate judge's "disposition" has been objected to, district courts must review that disposition *de novo*. FED. R. CIV. P. 72(b)(3). But when, as here, no party has timely objected, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72 advisory committee's notes (citation omitted). Although Rule 72 is silent on the applicable standard of review when neither party has objected to the magistrate judge's report and recommendation, the Supreme Court has acknowledged that Congress' intent was to require *de novo* review only where objections have been properly filed—and not when neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). In any event, the Eleventh Circuit has been clear that "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citing *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)).

## ANALYSIS

The Court has reviewed the R&R, the record, and the governing law and can find no clear error in the R&R. Moreover, in the interest of justice, the Court has separately conducted a *de novo*

review of both the entire record and the applicable law—and, even under that standard, likewise concurs with Judge Reid's recommendation.

## I. RLUIPA's Legal Framework

"RLUIPA is the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens, consistent with this Court's precedents." *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005) (page numbers omitted). "Less sweeping than" the better-known Religious Freedom Restoration Act ("RFRA")—which Congress had passed ten years earlier—and "invoking federal authority under the Spending and Commerce Clauses," *see id*. at 715, RLUIPA provides (as relevant here) that "[n]o [state or local] government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government can show that the burden furthers "a compelling governmental interest" and does so by "the least restrictive means." § 2000cc-1(a)(1)-(2). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A). This aspect of RLUIPA applies whenever "the substantial burden [on religious exercise] is imposed in a program or activity that receives Federal financial assistance," or when "the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes." § 2000cc-1(b)(1)-(2). "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." § 2000cc-2(a).

Put simply, RLUIPA "imposes an initial burden on the plaintiff 'to prove that the challenged law, regulation, or practice substantially burdens his exercise of religion.'" R&R at 8 (citations omitted). If the Plaintiff satisfies this burden, then the Defendants must show that the

law, regulation, or practice "is the least restrictive means of furthering a compelling governmental interest." *Id.* And, because RLUIPA mandates "a 'more searching standard' of review of free exercise burdens than the standard used in parallel constitutional claims," like the First Amendment, the Court must begin its analysis here. *See McCree v. Pocock*, No. CIVA 1:06CV1279 TWT, 2007 WL 1810143, at *2 (N.D. Ga. June 19, 2007) (quoting *Lovelace v. Lee,* 472 F.3d 174, 186 (4th Cir.2006)); *see also Smith v. Allen*, 502 F.3d 1255, 1277 n.5 (11th Cir. 2007) ("If a prison's regulation passes muster under RLUIPA . . . it will perforce satisfy the requirements of the First Amendment, since RLUIPA offers greater protection to religious exercise than the First Amendment offers.") (citation omitted), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011).

In passing RLUIPA, Congress intended to "secure redress for inmates" who encountered "frivolous or arbitrary" barriers to their right to freely exercise their religion. *Cutter*, 544 U.S. at 717 (quoting 146 Cong. Rec. 16698, 16699 (2000) (joint statement of Sen. Hatch and Sen. Kennedy on RLUIPA); *see also Cutter*, 544 U.S. at n.5 (citing examples of "frivolous or arbitrary" barriers from correctional facilities across the country). But lawmakers also "anticipated [] that courts entertaining [religious exercise RLUIPA complaints] would accord 'due deference to the experience and expertise of prison and jail administrators.'" *Cutter*, 544 U.S. at 717 (quoting S. Rep. No. 103-111, p. 10 (1993)). In other words, in passing RLUIPA, Congress did not mean to prohibit *all* custodial restrictions on religious exercise. *Id.* at 716. Instead, Congress sought to proscribe only those "egregious and unnecessary" restraints that "substantially burden" an inmate's religious rights. *Id.*

**II.     The Passover Registration Requirement Does Not Impose a Substantial Burden**

Dorman challenges the Jail's 2018 requirement that any inmate who wished to participate

in the Passover service had to notify Jail officials of this wish at least 45 days before the start of the holiday—in other words, by February 14, 2018. *See generally* Complaint. The Defendants contend that this registration requirement did not abridge—which is to say, did not impose a substantial burden on—Dorman's RLUIPA and First Amendment rights. *See* Motion to Dismiss at 6-8. And, the Defendants add, even if this requirement did somehow create a substantial burden, Dorman did not notify Jail officials of his intention to participate in the service until several days *after* Passover had begun (and two days after the Seder service had been held). *Id.* In this respect, the Defendants point out that, in 2018, the Passover "Seder meal and service" occurred on March 30, 2018. *Id.* at 8. Because Dorman did not request anything at all until April 1, 2018 (two days later), his request was—putting aside the Jail's 45-day notice rule—effectively impossible to satisfy.

The Court cannot conclude that the Jail's regulation—which it posted on a kiosk computer Dorman and others used—was either frivolous or arbitrary. *Cutter*, 544 U.S. at 717. Nor, on this record, can the Court say that it was the kind of "egregious and unnecessary" restraint that would, in the ordinary course, "substantially burden" an inmate's religious rights. *Id.* at 716. As the Supreme Court has explained, RLUIPA must be applied with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security, and discipline, consistent with consideration of costs and limited resources." *Id.* at 723. Federal courts, therefore, may not "elevate [the] accommodation of religious observances over an institution's need to maintain order and safety." *Id.*

The Eleventh Circuit has likewise defined a "substantial burden" as an imposition of "significant pressure which directly coerces the religious adherent to conform his or her behavior" or that "tends to force adherents to forego religious precepts or . . . mandates religious conduct."

7

*See Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004). To qualify as a substantial burden, then, the government's action must "significantly hamper one's religious practice." *Smith*, 502 F.3d at 1277.

Applying these or similar standards, federal courts throughout the country have consistently refused to find RLUIPA violations in far more onerous circumstances than are presented by the Jail's 45-day registration requirement here. *See Aiello v. West*, 207 F. Supp. 3d 886, 892 (W.D. Wis. 2016) (90-day advance notice requirement for inmates to request Seder plate did not impose substantial burden under RLUIPA); *see also Ghashiyah v. Litscher*, 278 F. App'x 654, 658 (7th Cir. 2008) (finding frivolous the inmate's contention that his religious rights were substantially burdened under RLUIPA by the requirement that he fill out a form to obtain religious property); *Woods v. Evatt*, 876 F. Supp. 756, 764 (D.S.C. 1995), *aff'd*, 68 F.3d 463 (4th Cir. 1995) (requirement to register as a Muslim prior to participating in certain religious services was not a substantial burden on inmates' rights to practice their religion); *Pasco v. Donald*, No. 5:06-CV-141(CAR), 2007 WL 2874700, at *3 (M.D. Ga. Sept. 27, 2007) (prison's failure to provide meals that strictly complied with prisoners' religious dietary restrictions was only a "very minor inconvenience" and not a substantial burden); *Guillory v. Fischer*, No. 9:12-CV-00280 LEK, 2013 WL 1294626, at *14 (N.D.N.Y. Mar. 7, 2013) ("[A] single infringement of a plaintiff's right to attend a religious service is not a substantial burden . . . [i]ndeed, it is doubtful if even two acts of infringement would be sufficient to surmount the substantial burden threshold") (citing cases); *Ahdom v. Etchebehere*, No. 1:13-cv-01623-DAD-GSA, 2017 WL 8793335, at *1 (E.D. Cal. Dec. 12, 2017) (forcing prisoner to miss one day of Ramadan meals did not constitute substantial burden on prisoner's religious practice); *McKenzie v. Ellis*, No. 10-cv-1490-LAB (AJB), 2012 WL 4050297, at *5 (S.D. Cal. Sept. 13, 2012) (four-day denial of religious diet did not substantially

8

burden prisoner's religious practice); *Greenberg v. Hill*, No. CIV.A. 2:07-CV-1076, 2009 WL 890521, at *7 (S.D. Ohio Mar. 31, 2009) (missing two Seder meals over the course of several years was an isolated occurrence that did not qualify as a substantial burden under RLUIPA); *Resnick v. Adams*, 348 F.3d 763, 768-770 (9th Cir. 2003) (requirement that inmate sign application to receive kosher meals did not violate RLUIPA); *Waff v. Reisch*, No. CIV 07-4166, 2010 WL 3730114, at *10 (D.S.D July 30, 2010) (requirement that inmate complete a form to re-enroll in a kosher diet plan was not a substantial burden).

In sum, the Jail's requirement that inmates register for Passover meals at least 45 days before the holiday did not violate Dorman's RLUIPA rights. As the Supreme Court has recognized, correctional institutions have an important obligation to "maintain good order, security, and discipline." *Cutter*, 544 U.S. at 723 (citation omitted). Fulfilling this obligation requires that they deploy the "expertise of correctional officials" who can "devise reasonable solutions to problems" while "maintaining safety and order." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 326 (2012). And the Supreme Court has admonished lower courts to remember that jail officials wield "substantial discretion" in carrying out these objectives. *Id.*

To hold a religious service—like the Passover service at issue here—jail officials must determine, in the first instance, how many inmates will be participating. This basic inquiry, in turn, implicates a host of other important practical considerations, such as: how many guards will be needed; how will the prisoners be transferred to the holiday service; how many meals must be ordered; how many seats, tables, and units of dish- and silverware must be commissioned; and what the total cost of the service will be. And this does not begin to take account of the many security concerns that might arise in a group service—including, among many other things, any separation orders that might be in place, under the terms of which some prisoners may be

9

prohibited from sitting next to one another. Indeed, where the separation arises, not because two prisoners are co-defendants, but because they are members of rival gangs, because they have a history of violence towards one another, or because one is cooperating (or has cooperated) against another, these separation orders may well raise acute security, logistical, and operational concerns. And, it almost goes without saying, the Jail must do all this for every religious holiday—a monumental task it must effectuate in addition to its continuous obligation to operate the Jail effectively.

These specific logistical concerns, to be sure, are not (strictly speaking) in the record before the Court. But the Court need not, in its 12(b)(6) analysis—or elsewhere—blind itself to the commonly-understood and well-established reality that correctional facilities routinely place "limitations on the exercise of constitutional rights" because of "both [] the fact of incarceration and from valid penological objective[s]—including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).[6]

More fundamentally, even if the Jail's policy had somehow violated RLUIPA, because Dorman did not request anything at all until *after* Passover had begun—and, in fact, until *after* the conclusion of the Seder meal and service on March 30, 2018—the Jail could not have timely complied with his request in any event. Put simply, Dorman's failure to timely notify Jail officials of his intention to participate in Passover services precludes him from stating a viable RLUIPA—

---

[6] In addition to "maintain[ing] good order, security, and discipline," the Jail was of course entitled, on the day of Dorman's request, to "look into the sincerity of [Dorman's] religious belief[] in conjunction with his request for and provision of special dietary accommodations for [Passover]." *Hathcock v. Cohen*, No. 05-60019-CIV, 2007 WL 9770910, at *10 (S.D. Fla. June 11, 2007) *aff'd sub nom. Hathcock v. Cohen*, 287 F. App'x 793 (11th Cir. 2008) (no substantial burden where inmate caused delay by failing to provide information chaplain needed to verify sincerity of religious belief before approving inmate's special dietary accommodation). Dorman's failure to notify Jail officials of his intention to participate in the holiday undeniably precluded the Jail from engaging in this inquiry, which might reasonably have lasted several days or more.

and, by extension, a plausible First Amendment—claim.[7]

Dorman's "Objection" does nothing to alter this conclusion.[8] *First*, his "early" filing in 2017 does not establish that the Jail's 45-day deadline in 2018 imposed upon him a substantial burden. Indeed, whether the Jail had a shorter registration requirement (or no registration requirement at all) in 2017, the question would still be whether *the 2018 requirement* imposed a substantial burden. And the Court has already concluded that it did not. In either event, because in 2018 Dorman did not submit his request until after the Passover holiday had begun, Dorman cannot state a plausible RLUIPA claim—irrespective of what happened in 2017.

*Second*, Dorman cites no case for the illogical proposition that his 2017 registration should automatically register him for every subsequent holiday service—presumably in perpetuity. As the Court has explained, correctional facilities have compelling (and obvious) practical reasons for requiring inmates to register for a service in advance of the holiday—both because they must know *how many* inmates will be participating and, no less significantly, because they must know precisely *which ones*.

*Third*, the Jail certainly has an obligation to post registration requirements publicly. But an inmate cannot argue these requirements by simply claiming—as Dorman does here—that he did not see them. Otherwise, any inmate could state a plausible RLUIPA claim by refusing to look up

---

[7] In any event, even if the Jail's 45-day registration requirement had substantially burdened Dorman's RLUIPA rights, the *individual* Defendants would nevertheless be entitled to qualified immunity. After all, there is no case—either in this Circuit or elsewhere—that clearly establishes the illegality of the Defendants' decision to implement a 45-day registration requirement. *See Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012) (explaining that qualified immunity offers complete protection for government officials sued in their individual capacities when their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known).

[8] As the Court has already explained, *see* The Procedural History, *supra*, the Court need not even address this "Objection" at all.

11

or around him—or, more likely, by disingenuously alleging that, whatever the breadth of the dissemination, for whatever reason, he never noticed it.

In his response, Dorman does not deny that the Jail posted the notice in the Jail kiosk computer that he and the other inmates routinely used. Instead, he contends that certain notices, like the one at issue here, are simply more important than others. [ECF No. 55 at ¶ 3]. And he argues that, for those more-important notices, the Jail has an obligation *both* to post them online *and* to print them. *Id*. But to require the Jail, as Dorman suggests, to print out only certain kinds of postings—indeed, to single out as especially significant some Jail notices over others—would unjustifiably abridge the "due deference" the Supreme Court has instructed district courts to employ with regard "to the experience and expertise of prison and jail administrators." *Cutter*, 544 U.S. at 717.[9]

### III. Leave to Amend

Federal courts should "freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a). "A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962). Because Dorman failed to register for the Passover meals until after Passover had already begun—and given that he did not register for the service until after the service had already taken place—he cannot state a plausible claim for relief. In these circumstances, any "amendment would be futile." *Bryant*, 252 F.3d at 1163.

---

[9] Here, again, the Court must remain mindful of the Supreme Court's admonition that jails enjoy "substantial discretion" in carrying out their objectives. *Florence*, 566 U.S. at 326.

\* \* \* \* \*

Accordingly, the Court hereby **ORDERS AND ADJUDGES** as follows:

1. Judge Reid's R&R [ECF No. 67] is **ACCEPTED AND ADOPTED**.

2. The Defendants' Motion to Dismiss [ECF No. 53] is **GRANTED**.

3. The Complaint [ECF No. 1] is **DISMISSED with prejudice** for failure to state a claim.

4. The Clerk of the Court is instructed to **CLOSE** this case, and any other pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 10th day of February 2020.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Bradley Dorman, *pro se*